**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ERIC ORR,

    Plaintiff,

v.                                                              Case No. 10-11389

CITY OF ROSEVILLE, et al.,

    Defendants.
_____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S STATE LAW CLAIMS,
STRIKING NON-COMPLIANT PLEADING AND REQUIRING TIMELY REFILING**

Pending before the court is Plaintiff's complaint which alleges the following counts:

- Count I: Assault and Battery

- Count II: False Arrest

- Count III: False Imprisonment

- Count IV: Abuse of Process

- Count V: Malicious Prosecution

- Count VI: Defamation

- Count VII: Intentional Infliction of Emotional Distress

- Count VIII: "Violation of 42 U.S.C. Section 1983"

- Count IX: Negligent Infliction of Emotional Distress

- Count X: Violation of Ministerial Duties

Only the eighth count expresses a claim under federal law; the other nine counts allege claims under state law. As a preliminary matter concerning Count VIII, the court

interprets Plaintiff's claim as one that alleges violation of constitutional rights, actionable under 42 U.S.C. § 1983. That statute is procedural, confers no substantive rights, and is not itself capable being "violated." See *Graham v. Connor,* 490 U.S. 386, 393-94, (1989) (Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'") (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)).

The court has original jurisdiction over Plaintiff's § 1983 claim. 28 U.S.C. § 1331. Because Plaintiff's state law claims arise out of the same incident and share a common nucleus of operative fact, the court could exercise its supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. However, the court now considers if granting supplemental jurisdiction is in the interest of judicial economy, convenience, fairness and comity. The court determines that it is not, and will dismiss, without prejudice, all of Plaintiff's state law claims.

## I. BACKGROUND

According to his complaint, on November 24, 2008, Plaintiff, an African American man, and Anthony Morgan, a white man, were riding as passengers in a car driven by Joshua Sullivan, an African American man. (Compl. ¶ 13(a).) The car was stopped for alleged traffic violations by Defendant Jason Otto, a white police officer. (Compl. ¶ 13(b).) Defendant Officer Otto allegedly treated Plaintiff and the car's other occupants in a racist, hostile manner during the traffic stop, and subsequently detained and searched the car and occupants. (Compl. ¶ 13(c).) Two additional white police officers (Defendant Officers Oakie and Pfeil), each of whom also allegedly behaved in a racist, hostile manner, arrived on the scene to assist Defendant Officer Otto in his search of

the car and occupants. (Compl. ¶ 13(d).) The Defendant officers used physical force to remove Plaintiff and Mr. Sullivan from the car in order to search them; afterwards the officers arrested and imprisoned them. (Compl. ¶ 13(e).) The complaint further alleges that the Defendant officers allowed Mr. Morgan, the car's sole white passenger, to depart the scene after Plaintiff and Mr. Sullivan were searched and arrested. (Compl. ¶ 13(f).) Plaintiff alleges generally that the City of Roseville and the Roseville Police Department have *de facto* policies of racial discrimination and harassment of African Americans. (Compl. ¶ 15.) During their search, the Defendant officers, who were searching for marijuana and other contraband, found nothing. (Compl. ¶ 13(i).) Plaintiff alleges that all of the Defendant officers conspired to charge him and Mr. Sullivan with the criminal offenses of resisting and obstructing a police officer (Compl. ¶ 13(k)), and that Defendant Officers Otto and Oakie gave perjured testimony at Plaintiff's evidentiary hearing and criminal jury trial. (Compl. ¶ 13(m).) At trial, Plaintiff was ultimately acquitted of the charged offenses of resisting and obstructing an officer. (Compl. ¶ 13(n).)

Plaintiff now brings a claim under 42 U.S.C. § 1983 and nine claims under Michigan state law based on the actions of Defendants.

## II. DISCUSSION

A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g., Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only

3

state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Supreme Court broadly authorized federal courts to assert jurisdiction over state law claims when there existed a "common nucleus of operative fact "comprising" but one constitutional 'case,'" so long as the court had original jurisdiction over at least one claim. *Gibbs*, 383 U.S. at 725. While this decision granted district courts broad power over pendent state claims, it also recognized discretion in hearing such claims: "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over the state claims . . . ." *Id.* at 726. The Court stated that pendent party jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

Congress later codified the power of a federal court to hear state claims. 28 U.S.C. § 1367 (2006). Similar to the standards articulated in *Gibbs*, the statute recognizes a court's discretion to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

4

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Subsections two and four are applicable to this case.

Though § 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* H.R. REP. NO. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (indicating that, under *Gibbs* and "current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis.").

### A. Dismissal Pursuant to 28 U.S.C. § 1367(c)(4)

A district court may deny supplemental jurisdiction pursuant to § 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (2006). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software*, 24 F.3d at 1557. Once the court decides that there are compelling reasons to decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances confronted are "exceptional." *Id.* at 1558.

### 1. "Compelling Reasons" for Dismissing Plaintiff's State Law Claims

Courts generally accept that "compelling reasons for the purposes of [§ 1367] (c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.* at 1557 (internal citations omitted); *see also Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). When deciding whether to agree or decline to exercise jurisdiction over supplemental state claims, the court considers the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion).

Litigation in federal court that mixes federal law claims with supplemental state law claims can cause procedural and substantive problems; in the interests of judicial economy and convenience, these problems should be avoided. *Id.* Even where, as in the present case, the federal and state claims arise out of the same factual background, the simultaneous litigation of such claims may prolong pre-trial practice, complicate the trial, lengthen and make more complex the jury instructions leading to potential confusion of the jury, result in inconsistent verdicts and cause post-trial problems with respect to judgment interest and the availability of prevailing party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over state claims may be substantially offset by problems simultaneously created. The court will review the federal and state claims in some detail to determine if supplemental jurisdiction should be exercised over the state claims.

### a. Claims and Legal Standards

To prove claims actionable under § 1983, Plaintiff must show that he was deprived of a right secured by the federal Constitution and that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996).

Here, Plaintiff claims that Defendants violated various of his rights, although the claims are stated in very general terms without including any Constitutional citations. (Compl. ¶ 79.) Plaintiff alleges a violation of his right to due process (Compl. ¶ 79(a)); that he was subjected him to an unreasonable search and seizure (Compl. ¶¶ 79(b)-79(c)) and cruel and unusual punishment (Compl. ¶ 79(d)); a violation of his right "not to be interrupted in associating with persons of his own choice" (Compl. ¶ 79(e)) and his privilege of movement and travel (Compl. ¶ 79(f)); and, finally, that Defendants violated his right to equal protection of the law.

The standard of adjudication for Plaintiff's central Constitutional claims –those 4th Amendment improper arrest and excessive force claims related to the basis of and the manner in which he was taken into custody– is an objective one. See *Pierson v. Ray,* 386 U.S. 547, 555 (1967) (holding that a police officer who makes an arrest in good faith and with probable cause is not liable for false arrest simply because the subject was proved innocent); cf. *Baker v. McCollan,* 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested."); *Graham,* 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Plaintiff's due process claim appears not so central to his case, and in any event is likely subsumed in the false arrest allegation. *See, e.g. Estate of Dietrich v.*

7

*Burrows*, 167 F.3d 1007, 1010 (6th Cir. 1999).  The same might eventually become of Plaintiff's claims that he was "interrupted" in his effort to associate, and that his right freely to travel was restricted –both of these alleged violations of right arising, it appears, because Plaintiff was arrested.  Plaintiff's final claim –a violation of equal protection– stands independent of a probable cause analysis, see *Whren v. U.S.*, 517 U.S. 806 (1996), and does not employ a similarly objective test.[1]

Six of Plaintiff's nine parallel state law claims focus almost entirely on the Defendants' *subjective* mental state.  Under Michigan law, assault & battery, false arrest, false imprisonment, abuse of process, malicious prosecution and intentional infliction of emotional distress are all intentional torts.  *See Young v. Morrall*, 101 N.W.2d 358, 362 (Mich. 1960) (assault & battery); *Piper v. Piper*, 81 N.W. 554, 554 (Mich. 1900) (abuse of process)*; Cavalier Mfg. Co. v. Employers Ins. of Wausau*, 535 N.W.2d 583, 588 (Mich. App. 1995) (false imprisonment, malicious prosecution); *Linebaugh v. Berdish*, 376 N.W.2d 400, 405 (Mich. App. 1985) (false arrest).[2]

---

[1] An equal protection claim in these circumstances appears to require a plaintiff to prove, first, that he was singled out by a decision-maker as belonging to an identifiable group –e.g., racial or religious– for arrest or prosecution while the decision-maker had decided not to arrest or prosecute persons not belonging to that group in similar situations. Second, the decision-maker must initiate the arrest or prosecution with a discriminatory purpose. Third, the arrest or prosecution must have a discriminatory effect on the identifiable group to which the defendant belongs. See *Stemler v. City of Florence,* 126 F.3d 856, 873 (6th Cir. 1997).

[2] Plaintiff also asserts claims for defamation, violation of ministerial duties and negligent infliction of emotional distress.  A claim for defamation presents a substantially different theory of relief than the rest of the federal claims asserted in this case.  *See generally Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).  Moreover, there is some indication that the latter two causes of action may rise or fall along with the intentional state torts asserted by Plaintiff, as Michigan courts will not allow a party to transform intentional torts into negligent

8

Exercising supplemental jurisdiction over these state law claims would require additional testimony, evidence and a probing into a defendant officer's alleged mental state at the time of the alleged conduct. Additionally, many of the state law claims would require a jury to understand, distinguish and apply two distinct standards of reasonableness in the same case. This would certainly result in more lengthy jury instructions, jury confusion and inconvenience to the parties that would not be present if the claims were tried separately.

### b. Available Defenses

The nature and use of available defenses also differs considerably in Plaintiff's state and federal claims. Because even deadly force is constitutionally permissible under some circumstances (*see, e.g., Tennessee v. Garner*, 471 U.S. 1 (1985)), proof of Defendant's use of force alone will not satisfy Plaintiff's federal claim. *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989). Instead, to succeed under § 1983, "Plaintiff [must] show that [the Officer's] use of force was unjustified in order to state a constitutional deprivation." *Id.* Such is not the case for Plaintiff's state law claims. Instead, proof of force plus subjective intent will shift the burden to Defendant to justify such force as reasonable and necessary under the affirmative defenses of self-defense or defense of others. *Id.*; *see also Ealey v. Detroit*, 375 N.W.2d 435, 437 (Mich. Ct. App. 1985). This

---

torts. *See Wyatt v. Blair*, No. 259750, 2006 WL 2135761, *6 (Mich. Ct. App. Aug. 1, 2006) ("Plaintiffs' general claims of negligence and claims of negligence in relation to their claims of violation of ministerial duties and infliction of emotional distress merely reassert their claims of intentional tort. Plaintiffs may not, however, transform these claims into additional claims for gross negligence.") (citing *VanVorous v. Burmeister*, 687 N.W.2d 132 (Mich. Ct. App. 2004).

shifting burden, coupled with the different application of defenses to different claims at different stages, will almost certainly lead to jury confusion and inefficiency.

### c. Immunity

Plaintiff's state and federal law claims also apply different versions of immunity, a further complication in their being tried together. Under federal law, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining if a government official is entitled to such qualified immunity, a court must first determine if a federal right was violated and, if so, whether that right was "so clearly established that a reasonable official would understand that his particular conduct would violate that right." *Wilkins v. City of Royal Oak*, No. 04-73276, 2005 U.S. Dist. LEXIS 42474, at * 26 (E.D. Mich. 2005). A court must also determine if the officer was performing a discretionary function at the time. *Id*. This immunity is relatively straightforward and turns on the objective reasonableness of the official's actions. *See generally Harlow*, 457 U.S. 800.

Immunity under state law is remarkably different, as it applies a *subjective* standard of review to the official's actions. Unlike federal qualified immunity, officers facing claims of intentional torts "are not shielded by [Michigan's] governmental immunity statute." *Sudul*, 562 N.W.2d at 479; *see* Mich. Compl. Laws § 691.1407(3). Unlike the immunity afforded from § 1983 claims, immunity from state torts under Michigan law depends upon an officer's subjective intent at the time of the alleged

10

assault. And, to further complicate the matter, application of this immunity is not a straightforward process:

> Governmental immunity [under Michigan law] has been, at best, a confusing area of the law for the bench and bar of our state for many years and, unfortunately, attempts to explain it have often resulted in increasing the quagmire in which we collectively have found ourselves on this subject.

*Sudul*, 562 N.W.2d at 490 (Murphy, J., dissenting). The differences in the applicability of governmental immunity between Plaintiff's federal and state claims, as well as the "quagmire" that has evolved regarding the application of such immunity to state claims under Michigan law, are additional factors that would complicate the simultaneous trial of federal claims, confuse the jury and inconvenience the parties.

### d. Vicarious Liability

Another area of conflict between the federal and state claims in the present issue involves the question of vicarious liability. The law of municipal liability under § 1983 is governed by *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) and its progeny. Under this line of cases, "the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." *Monell*, 436 U.S. at 662 n.7. Rather, municipal liability depends upon whether "someone in a supervisory capacity . . . at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employee." *Sudul*, 562 N.W.2d at 482.

In Michigan, the law of municipal liability is markedly different from that under § 1983. Unlike federal municipal liability, which examines whether the municipality authorized or acquiesced in the alleged conduct, state liability is precluded by the

11

immunity statute, Mich. Compl. Laws § 691.1407, which states: "a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge or a governmental function." Mich. Compl. Laws § 691.1407(1) (2006). Under the statute, a municipality can only be held liable "with respect to providing medical care or treatment to a patient." Mich. Compl. Laws § 691.1407(4).

Under the Michigan provision, municipalities enjoy broad immunity and there is no question as to any authorization or acquiescence. As such, a municipality could be held liable only under the federal claim. This dichotomy would likely confuse the jury, and could reasonably lead to a verdict that exonerates the governmental agency from § 1983 liability simply because it cannot be liable for the state tort actions. Such a result would be contrary to the interest of justice.

### e. Recoverable Damages

Recoverable damages are drastically different as to Plaintiff's federal and state claims. Under federal law, a successful § 1983 Plaintiff may recover punitive damages against individual defendants. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). In direct contrast, "[i]n Michigan, the courts . . . refuse to allow the recovery of punitive damages." *Fellows v. Superior Prods. Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993) (quoting *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 805 (E.D. Mich. 1989)). As a result, Plaintiff would be entitled to seek punitive damages against the officers for his § 1983 claims but not for the remainder of his claims.

Punitive damages, by definition, "are not intended to compensate the injured party, but rather to punish the tortfeasor." *City of Newport*, 453 U.S. at 266. The jury would be instructed that they *are* permitted to "punish" for an egregious 4th Amendment

12

excessive force violation but that they are *not* so permitted for even an obvious violation of state assault and battery law, gross negligence, or intentional infliction of emotional distress. This difference could easily lead to an artificially –and unfairly– high award for a proven § 1983 claim in order to "compensate" for the jury's inability to award punitive damages for the state law claims. It could also result in an unfairly low award if the jury were to incorrectly conclude that, since Michigan law does not permit punitive damages, the proven federal claim is not deserving of such an award either. In either scenario, the different treatment of punitive damages under state and federal law could result in jury confusion, lengthy jury instructions, and an unfair verdict.

### f. Compelling Reasons Exist to Dismiss Plaintiff's State Claims

The potential for jury confusion has been identified as a compelling reason for a district court to decline to exercise supplemental jurisdiction. *Gibbs*, 383 U.S. at 727; *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 571 (W.D.N.Y. 1987); *Gasque v. King*, No. 90-00470, 1991 U.S. Dist. LEXIS 19260, at *5-6 (M.D.N.C. 1991); *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D. Neb. 1997); *see also* Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3567.1, n. 46. (2d ed. 1984). In considering this potential, as well as the interests of economy, convenience, fairness and comity, the court finds that the state claims should be dismissed. To exercise supplemental jurisdiction over these claims would result in confusion, inconvenience and potentially unfair results given the systematic disparity between these claims, including their various legal standards, available defenses, potential immunity from suit, potential vicarious liability and potentially recoverable

damages. Therefore, the court will dismiss without prejudice the state law claims asserted by Plaintiff.

## 2. This Case Presents "Exceptional Circumstances"

Courts must ensure that the reasons for declining to exercise supplemental jurisdiction identified as "compelling" are not deployed in circumstances that are not "exceptional." *Executive Software*, 24 F.3d at 1558. Courts agree that the inclusion of the phrase "exceptional circumstances" limits the broad discretion that district courts once entertained under *Gibbs* to deny supplemental jurisdiction in any case. *See, e.g., Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998); *Executive Software*, 24 F.3d at 1558. However, Congress only "sounded a note of caution" and did not restrict a district court's ability to dismiss claims only in cases that were "ridiculous" or "impractical." *Executive Software*, 24 F.3d at 1558, 1560 (citing *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional circumstances were present when parallel state proceedings were underway and therefore the adjudication of state claims would be a "waste of judicial resources.")).

The court finds that exceptional circumstances are present in this case in weighing the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome which could readily result by attempting to resolve all claims in a single trial. Though there would be some duplication of effort required by Plaintiff and the defense in this case if Plaintiff decides to pursue both claims, the court finds that any advantages to be gained by trying all claims together are outweighed by the potential for confusion of the issues, legal

14

theories, defenses and possible relief. Thus, the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

### B. Dismissal Pursuant to 28 U.S.C. § 1367(c)(2)

Separately, a district court may decline the exercise of supplemental jurisdiction pursuant to § 1367 if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). As already discussed in detail, the state claims presented here implicate myriad problems including the need to introduce evidence inapplicable to – indeed inconsistent with – the evidence relevant to the federal claim, additional witnesses, disparate legal theories on both claims and defenses and significantly expanded and contradictory jury instructions. The court finds that the state claims presented in this case would, for these reasons, predominate over the § 1983 federal claim over which the court has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(2), the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

## III. FORM OF PLEADING

Plaintiff has electronically filed his complaint using a commercial ".pdf generator" which inserts an advertisement into the document, in this case a watermark showing the web address of the .pdf generator, repeated five times on each page of text. Use of generators that introduce such clutter into the docket is prohibited. See E.D. Mich CM/ECF Policy R5(f) ("Papers containing advertisements, which may be generated as a result of the use of free or trial-run PDF conversion software, will be stricken."). The court will accordingly strike the Complaint and order Plaintiff to forthwith re-file a complaint consistent with the Local Rules, the CM/ECF Policies, and this Opinion.

## IV. CONCLUSION

Plaintiff's state law claims for assault and battery, false arrest, false imprisonment, abuse of process, malicious prosecution, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of ministerial duties do not have original jurisdiction in federal court. The inclusion of Plaintiff's state claims with Plaintiff's claim under 42 U.S.C. § 1983 could lead to jury confusion, judicial inefficiency, inconvenience to the parties and an unfair outcome. Additionally, these claims would predominate over Plaintiff's § 1983 federal claim. Pursuant to 28 U.S.C. §§ 1367(c)(2) and (4), the court exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claims. Accordingly,

IT IS ORDERED that all of Plaintiff's state law claims including, without limitation, claims of assault and battery (Count I), false arrest (Count II), false imprisonment (Count III), abuse of process (Count IV), malicious prosecution (count V), defamation

16

(Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count IX), and violation of ministerial duties (Count X) are hereby DISMISSED WITHOUT PREJUDICE, leaving only Plaintiff's claim arising under federal law through 42 U.S.C. § 1983 (Count XIII) now remaining before this court.

IT IS FURTHER ORDERED that Plaintiff's complaint [Doc #1], as it is in violation of CM/ECF Policy R5(f), is hereby STRICKEN from the record without prejudice.

IT IS FURTHER ORDERED that not later than **June 30, 2010,** Plaintiff shall file a revised complaint that is compliant with Local Rules and Policies and consistent with this Opinion and Order.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: June 24, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 24, 2010, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522